IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GONZALO SERAFIN ALCALA,                          )
                                                 )
                    Petitioner,                  )          No C 04-4931 JSW (PR)
                                                 )
          vs.                                    )          ORDER DENYING PETITION
                                                 )          FOR A WRIT OF HABEAS
JOE MCGRATH, Warden,                             )          CORPUS
                                                 )
                    Respondent.                  )
_____          )

## INTRODUCTION

        Gonzalo Alcala, a prisoner of the State of California currently incarcerated
at Pelican Bay State Prison, has filed a pro se petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  This Court ordered Respondent to show cause as
to why five claims raised in the petition should not be granted.  Respondent filed
an answer, a memorandum of points and authorities in support thereof, and
exhibits.  This order denies the petition for writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

        The parties agree on the following procedural history: on May 11, 2000, a
jury in the Superior Court of the State of California, County of Napa, found
Petitioner guilty of involuntary manslaughter and discharging a firearm from a
motor vehicle.  The jury found true an enhancement on both counts that the
offense was committed for the benefit of, at the direction of, or in association
with a criminal street gang.  The jury found true an enhancement on the count of
discharging a firearm from a motor vehicle that Petitioner was a principal in the

commission of the offense and proximately caused great bodily injury or death to another person.  On September 12, 2000, the trial court denied Petitioner's motion for a new trial and motion to treat the conviction on discharging a firearm from a motor vehicle as a misdemeanor instead of as a felony.  The trial court sentenced Petitioner to a term of 26 years and 4 months to life in state prison.

Petitioner appealed to the California Court of Appeal, First District, which affirmed the conviction in an unpublished, reasoned opinion filed on June 12, 2003.  On August 20, 2003, the Supreme Court of California denied a petition for review.  On November 19, 2004, Petitioner filed the instant petition.

## STATEMENT OF THE FACTS

The facts of the case are summarized from the California Court of Appeal opinion as follows:

> On the late afternoon of May 16, 1998, G.E. and Michael A. (the deceased) were parked at the curb on Brown Street near H Street and Lincoln Avenue in Napa, trying to fix a flat tire on G.E.'s Buick Riviera.  Both G.E. and Michael A. were associated with the Norteno street gang.  While the group was occupied with the car, a gray Chevrolet Caprice stopped at the stop sign at the corner for a period of time, and then raced by.  The Caprice was driven by Robert C. and was occupied by Manuel A., O.M. and J.M., all of whom were associated with the Sureno street gang.  Gang-related gestures and insults were exchanged between the group standing around the Riviera and those in the Caprice, although the evidence was in dispute as to which individuals on either side were making the challenging remarks and gestures.
>
> Shortly thereafter, the gray Caprice returned with another car, a white Monte Carlo.  As the two cars drove slowly by the group standing around the Riviera, gang-related hand signals were flashed and epithets were shouted out.  Gunshots were fired from the right front passenger side of the Monte Carlo.  J.H., who had a loaded .22-caliber semiautomatic Ruger in his possession and was known to have had such a gun in the past, was seated in the front passenger seat of the Monte Carlo.  There were three other persons in the car: J.M. (the driver), Manuel A., and Reyes C.  Witnesses saw J.H. holding a gun out the window of the Monte Carlo, and also heard shots being fired from the car.  There was also gunfire from the Caprice, driven by Robert C.  The front passenger seat of the Caprice was occupied by O.M., while appellant, Pablo C. and Pedro C. were riding in the back seat.  Pedro C. was in possession

2

of a .22-caliber revolver.

According to several witnesses testifying under grants of immunity, Pedro C. handed appellant his revolver because appellant was sitting on the side of the Caprice facing the group gathered around the Riviera; and appellant then hung out of the window of that vehicle throwing gang signs and shouting taunts about "payback." Pedro C. and Pablo C. both testified that they heard a shot that sounded as though it came from or near the Caprice, but did not see appellant shoot; and that appellant subsequently participated in hiding the guns and cleaning them for fingerprints.  After the shooting, both the revolver belonging to Pedro C. and the Ruger that J.H. had used to fire the fatal bullet were ultimately disposed of by being thrown into a creek.

As the Caprice and the Monte Carlo drove away, most of the group of people who had gathered around the Riviera fled in all directions.  Michael A. had been shot.  Some of the group tried unsuccessfully to load him into a car.  When the police arrived, Michael A. was lying on the street with this feet in the car.  A total of eight bullet casings were in the roadway and an adjacent driveway.  All the bullet casings had been fired by the same weapon.  Michael A. was taken to the hospital, where he was pronounced dead at 9:12 p.m.  The cause of his death was a gunshot wound to the head.  The bullet was recovered and given to the police.  It was consistent with having been fired from a Ruger exactly like a stolen Ruger known to have been in the possession of J.H.

Appellant at first denied being present at the drive-by shooting. Interrogated by the police, he eventually admitted being in the Caprice and firing one shot from Pedro C.'s revolver out of the window.  They followed the Monte Carlo, which went first because J.H.'s gun was better and could fire several rounds.  Appellant and the other occupants of the Caprice watched the Monte Carlo speed up to the Nortenos and stop as J.H. leaned out the window and fired a number of shots.  The Monte Carlo then drove further and stopped again while J.H. shot three or four more times back toward the Norteno group.  As the Caprice drove by, Pedro C. passed appellant the gun.  Appellant yelled "Payback" out the window, referring to his belief that G.E. had vandalized his mother's car, and fired one shot.  He insisted that his only intention was to shoot G.E.'s car, and that was where he aimed.

By amended information, appellant was charged along with his three codefendants with murder (§ 187(a), count one); shooting from a motor vehicle (the Monte Carlo) at a non-occupant (§ 12034(c), count two); shooting from a motor vehicle (the Caprice) at a non-occupant (§ 12034(c), count three); shooting from the Monte Carlo (§ 12034(d), count four); and shooting from the Caprice (§ 12034(d), count five). By way of enhancements, the information alleged among other things that the offences were

3

committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22(b)(1); and that appellant was a principal in the commission of the offense and a firearm had been intentionally discharged in the commission of the offense, proximately causing great bodily injury to another person (§ 12022.53(d), (e)(1)).

After the presentation of evidence and both the prosecution and the defense had rested their respective cases, the trial court granted the district attorney's motion to dismiss counts three and four, as well as a special circumstance allegation in connection with count one. The trial court also ordered that a charge of first degree murder not be submitted to the jury. The jury found appellant not guilty of second degree murder as charged in count one, but guilty of the lesser included offense of involuntary manslaughter (§ 192(b)); not guilty of discharging a firearm from the Monte Carlo at a non-occupant as charged in count two, but guilty of the lesser included offense of discharging a firearm from that motor vehicle (§ 12034(d)); and guilty of discharging a firearm from the Caprice, as charged in count five. The jury found true the allegation that appellant had committed both offenses for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22(b)(1)); and, in connection with count two only, that appellant shared principal liability as an aider and abettor in the commission of the offense, in which a firearm had been intentionally discharged proximately causing great bodily injury or death to another person (§ 12022.53(d), (e)(1)).

The trial court denied appellant's motion for a new trial and his motion to reduce count two from a felony to a misdemeanor. The trial court proceeded to sentence appellant as follows: on count two, to the lower term of 16 months in state prison, plus 25 years to life for the associated enhancement pursuant to section 12022.53(d) and (e)(1), but with no sentence imposed in connection with the gang enhancement (§ 186.22(b)(1)); on count five, to the mid-term of two years, plus one year for the gang enhancement, with that term to be served concurrently with the sentence on count two; and on count one, to the mid-term of three years, plus one year for the associated gang enhancement, both stayed pursuant to section 654.

*People v. Alcala*, No. A092716, 2003 Cal. App. Unpub. LEXIS 5770, at *4-7

(Cal. Ct. App. Jun. 12, 2003) (footnotes omitted).

## **STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf

4

of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a Petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal habeas court should conduct an independent review of the record. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id*.

In his petition for writ of habeas corpus, Petitioner asserts five claims for

relief: (1) the trial court's decision to treat one conviction as a felony and not a misdemeanor violated Petitioner's right to due process and trial by jury; (2) the trial court's allegedly erroneous application of California Penal Code § 654 violated Petitioner's right to due process; (3) the trial court's imposition of a sentencing enhancement under California Penal Code § 12022.53 violated the Ex Post Facto Clause of the Constitution; (4) Petitioner's sentence violates the Eighth Amendment command against cruel and unusual punishment; and (5) the trial court's failure to excuse a juror for cause violated Petitioner's right to a fair trial under the Sixth and Fourteenth Amendments.

## DISCUSSION

### 1.    Treatment of the "Wobbler" Offense

Petitioner claims that the trial court violated his right to due process and right to a trial by jury when it treated his conviction for discharging a firearm from a motor vehicle for sentencing purposes as a felony and not reducing it to a misdemeanor.  Petitioner claims that the trial court, in so deciding, made a factual determination about his state of mind during the shooting incident, which Petitioner claims should have been determined by the jury under the reasoning of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The claim is without merit.

As described above, the jury found Petitioner guilty on count two of discharging a firearm from a motor vehicle, in this case the shooting from the Monte Carlo (Cal. Penal Code § 12034(d)).  In connection with this count, the jury found true an enhancement allegation that Petitioner shared principal liability as an aider and abettor in the commission of the offense, in which a firearm had been intentionally discharged proximately casing great bodily injury or death to another person (Cal. Penal Code §12022.53(d) and (e)(1)).

7

The crime of discharging a firearm from a motor vehicle is known as a "wobbler" offense because it is punishable as either a misdemeanor or felony. *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *14. The offense is codified in § 12034(d), which provides:

> Except as provided in Section 3002 of the Fish and Game Code, any person who willfully and maliciously discharges a firearm from a motor vehicle is guilty of a public offense punishable by imprisonment in the county jail for not more than one year or in the state prison.

Cal. Penal Code § 12034(d). Cal. Penal Code § 17(a), in turn, provides that a felony is a crime punishable by imprisonment in the state prison, while every other crime is classified as a misdemeanor or infraction.

Prior to sentencing, defense counsel made a motion under California Penal Code § 17(b) asking the judge to treat Petitioner's § 12034(d) conviction as a misdemeanor and not a felony. *Id.* at *8. § 17(b) provides the court with the discretion to make that determination:

> When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: (1) After a judgment imposing a punishment other than imprisonment in the state prison.

Cal. Penal Code § 17(b). Defense counsel pleaded that the "jury has given [the judge] the power" to treat the conviction as a misdemeanor and argued that Petitioner's youth, relatively clean criminal record, and the minimal extent of his involvement in the shooting all called for leniency. Reporter's Transcript ("RT") at 125.

As all parties acknowledged, the trial court's decision was a significant one indeed. The § 12022.53(d) and (e)(1) enhancement the jury found true carried with it a mandatory 25-years-to-life sentence, but was only applicable if

the underlying offense was a felony:

> Notwithstanding any other provision of law, any person who, in the commission of a *felony* specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life.

Cal. Penal Code § 12022.53(d) (emphasis added).

The trial court denied Petitioner's motion to treat the § 12034(d) conviction as a misdemeanor. *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *9. The trial court noted it was an "entirely unhappy decision," but cited the extent of petitioner's "involvement in the pre-planning of what occurred" and noted Petitioner aided and abetted gang-related conduct that resulted in death. RT at 128-29. The court sentenced petitioner to the lower term for his offense, 16 months in state prison, but added 25 years-to-life as mandated in the § 12022.53(d) and (e)(1) enhancement. *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *9.

On appeal, Petitioner argued that the trial court's decision to treat his conviction on count two as a felony and not a misdemeanor involved a factual determination that, under *Apprendi*, should have gone to the jury. The Court of Appeal applied *Apprendi* in rejecting Petitioner's claim:

> "The rule of *Apprendi* ... only applies where the nonjury factual determination increases the maximum penalty beyond the statutory range authorized by the jury's verdict." (citations omitted) The determination of whether to treat a "wobbler" offense as a felony or as a misdemeanor is not such a factual determination. Every factual element of the charged offense was submitted to the jury; the jury not only found appellant guilty beyond a reasonable doubt of the charged offense, but additionally found the alleged enhancement true. Thus, the jury's verdict fully authorized the imposition of the 25-years-to-life enhanced sentence appellant received, based on the decision to treat the crime as a felony. The only non-jury determination was whether to impose an enhanced sentence within

9

the range already authorized by the jury's verdict. Under these circumstances, in which there was no trial court determination to increase the maximum statutory penalty that could be imposed, *Apprendi* has no effect.

*Id.* at *16-17.

### A.   Legal Standard

In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000).  The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004); *Cunningham v. California*, 127 S. Ct. 856, 871 (2007), (finding the Court's decisions from *Apprendi* to *United States v. Booker*, 543 U.S. 220 (2005), point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum; therefore, California's determinate sentencing law violates the Sixth Amendment because it authorizes the judge, not the jury, to find the facts permitting an upper term sentence).

### B.   Analysis

The California Court of Appeal correctly applied *Apprendi* in rejecting Petitioner's claim and Petitioner is not entitled to federal habeas relief.  In *Apprendi*, a New Jersey jury found defendant guilty of possession of a firearm for an unlawful purpose and unlawful possession on an antipersonnel bomb. *Apprendi*, 530 U.S. at 470.  The trial court then made a "factual determination"

10

that, by the preponderance of the evidence, the defendant acted with the purpose to intimidate an individual or group on the basis of their race, and enhanced defendant's sentence in accordance with the state penal code.  *Id.* at 471.  The Supreme Court reversed the judgment on appeal, finding it a violation of due process under the Fourteenth Amendment to remove from the jury the assessment of facts that *increased* the prescribed range of penalties to which defendant was exposed.  *See id.* at 490-92 (emphasis added).  The *Apprendi* Court made clear, however, that "nothing... suggests that is it impermissible for judges to exercise discretion – taking into consideration factors relating both to offense and offender – in imposing a judgment within the range imposed by statute."  *Id.* at 481.  The Court only proscribed "a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would have received if punished according to the facts reflected in the jury verdict alone."  *Id.* at 483.

Petitioner's situation is factually distinguishable from *Apprendi* and his reliance on that rule is misplaced.  As the Court of Appeal noted, Petitioner's sentence, including the enhancement for using a firearm in proximately causing great bodily injury or death, was fully authorized by the jury's findings.  The jury found Petitioner guilty, beyond a reasonable doubt, of every element of the offense, and found true the enhancement allegation.  The trial judge did not increase Petitioner's sentence *beyond* that which was statutorily authorized by the jury's finding, which would indeed violate *Apprendi*.  Unlike the trial judge in *Apprendi*, who made a "factual determination" as to the defendant's intent and bias in committing a racially-motivated crime, the trial judge in the instant case made no such judgements or determinations.  Rather, he only exercised his discretion, as the *Apprendi* Court approved of, to impose a "judgment within the

11

range imposed by statute" and within the range authorized by the jury.  *Id.* at 481.

Under California Penal Code § 17(b), it was well within the trial judge's discretion to sentence petitioner to state prison, thus classifying the underlying offense as a felony, or to impose some other *reduced* sentence, thus classifying the underlying offense as a misdemeanor and precluding the § 12022.53(d) and (e)(1) enhancement.  The trial judge, "taking into consideration factors relating both to offense and offender," opted for the former.  *Id.* at 481.   That choice was not of the factual nature that would implicate *Apprendi* because it was within the statutory range authorized by the jury's finding.

The Supreme Court recently held that California's determinate sentencing law (DSL), which prescribes a lower, middle, and upper term of punishment for enumerated offenses, implicates *Apprendi* and violates the Sixth and Fourteenth Amendments.  *See Cunningham v. California*, 127 S. Ct. 856, 860 (2007).  The Court found that the middle term was the "relevant statutory maximum" under *Apprendi* and that the DSL was thus untenable because it allows a trial judge to conduct non-jury fact-finding in deciding whether to impose the upper term sentence.  *See id*.  *Cunningham* was decided after Petitioner filed his claim, but it still affords him no basis for federal habeas relief.

In *Cunningham,* the Court held that the middle-term was the relevant statutory maximum for *Apprendi* purposes and disapproved of a trial judge's ability to impose an upper-term sentence on the basis of non-jury fact-finding.  In the instant case, it bears repeating that the trial judge sentenced Petitioner to the lower term on the underlying offense.  *Cunningham* has no bearing on Petitioner's claim.  Furthermore, in *Cunningham* the Court reiterated its approval, as it had in *Apprendi*, for broad sentencing discretion cabined within a statutory range: "We have never doubted the authority of a judge to exercise broad

discretion in imposing a sentence within a statutory range." *Id.* at 866.  In the instant case, the trial judge exercised his broad discretion to sentence petitioner within the statutory range for the underlying offense: "imprisonment in the county jail for not more than one year or in the state prison." Cal. Penal Code § 12034(d).  That the state prison sentence exposed Petitioner to a harsher sentencing enhancement does not mean it required the determination of some further factual issue by the jury.  Petitioner's sentence on the underlying offense was thus valid, as was the accompanying enhancement.

In *Cunningham,* the Court expressly distinguished statutory sentencing enhancements from the unconstitutional upper-term sentences, noting that enhancements "must be charged in the indictment, and the underlying facts must be proven to the jury beyond a reasonable doubt." *Cunningham*, 127 S. Ct. at 860.  While declining to mandate how California might bring its sentencing regime into compliance with Sixth and Fourteenth Amendments, furthermore, the Court did suggest the state look to its current procedure of submitting sentencing enhancements to the jury. *Id.* at 871.  Petitioner's sentencing enhancement thus does not offend *Apprendi* or *Cunningham*.

The trial court properly exercised its broad discretion to "impos[e] a sentence within a statutory range" when it treated Petitioner's conviction for discharging a firearm from a motor vehicle as a felony and not a misdemeanor. All elements of the offense, including the associated enhancement, were submitted to the jury and found beyond a reasonable doubt.  The trial court did not make non-jury factual determinations to elevate petitioner's punishment beyond a statutory range.  On this record, the state courts' rejection of Petitioner's claim was not contrary to, or involved an unreasonable application of, *Apprendi* and its progeny.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

13

to federal habeas relief on this claim.

## 2.   <u>Application of California Penal Code § 654</u>

In the instant petition, Petitioner raises anew a claim he brought before the California Court of Appeal but failed to raise in his petition to the California Supreme Court: that the trial court's refusal "to follow the clear language" of California Penal Code § 654 during sentencing violated his right to due process. Pet. at 7.  Petitioner fails to raise a colorable federal claim and he is not entitled to federal habeas relief.  *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that "a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim").

After the trial court determined to treat count two (discharging a firearm from a motor vehicle) as a felony and not misdemeanor, Petitioner faced a sentence of sixteen months, two years, or three years in state prison.  *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *10.  The trial court opted to sentence Petitioner to the lower term of sixteen months in state prison, but added the associated enhancement of 25 years-to-life.  *Id.*  In connection with count one (involuntary manslaughter), Petitioner faced a term of two, three, or four years. *Id.*  The court imposed the mid-term of 3 years, plus an additional year for the gang enhancement, but stayed this sentence pursuant to California Penal Code § 654.  *Id.*  Finally, the court imposed the mid-term sentence of three years, plus an associated gang enhancement of one year, on count five (discharging a firearm from the Caprice), to be served concurrently with the sentence for count two.  *Id.* Petitioner claims the trial court's decision to stay the sentence on count one and not count two violated § 654.

California Penal Code § 654 provides in relevant part:

14

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.

Cal. Penal Code § 654(a). Petitioner claims that the "clear language" of § 654 means the trial court should have sentenced him on count one, which carried the longest possible term of imprisonment at 4 years, and not count two, which carried a maximum term of 3 years. Petitioner's argument hinges on an interpretation of § 654 that excludes the enhancements that attach to the underlying offenses when calculating the "longest potential term of imprisonment." Petitioner favors this interpretation because it would stay his sentence on count two, which carried with it the sentence on the enhancement of 25 years-to-life.

The California Court of Appeal rejected Petitioner's argument, noting that

> [a]ppellant's interpretation of section 654 has now been definitively rejected by our own Supreme Court. In *People v. Kramer* (2002) 29 Cal.4th 720, the Supreme Court unanimously held that the length of associated enhancements must be considered together with the statutory terms for the underlying base offense in determining, for purposes of section 654, which "provision . . . provides for the longest potential term of imprisonment." Relying on the language of the statute as well as the legislative history of the statutory amendment adding the "longest potential term of imprisonment" language, the Supreme Court concluded that section 654 requires a sentencing court to impose the longest potential term of imprisonment, taking associated enhancements into account. Consequently, there is no merit to appellant's contention. The trial court was correct in staying the sentence on count one rather than count two, because the enhancement associated with the latter conviction carried the longer potential term of imprisonment.

*Id.* at *12-13.

## A.      Legal Standard

Federal courts must defer to the state courts' interpretation of state

sentencing laws. *See Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993); *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (federal habeas court is bound by a state court's construction of its own penal statutes). State sentencing courts must be accorded wide latitude in their decisions as to punishment. *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987), *cert. denied*, 488 U.S. 926, *and cert. denied*, 488 U.S. 981 (1988). Generally, therefore, a federal court may not review a state sentence that is within statutory limits. *See id.* Even if a state court misapplies its own sentencing laws, federal habeas relief is not available absent a showing of "fundamental unfairness." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

### B.    Analysis

Habeas petitioners are required to exhaust their claims for relief in the state courts before petitioning this Court for relief. *See* 28 U.S.C. § 2254(b), (c). The state's highest court must be given an opportunity to rule on the claims even if review is discretionary. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must invoke "one complete round of the State's established appellate review process"). Respondent correctly argues that Petitioner failed to present the instant claim to the California Supreme Court on appeal and the claim is thus unexhausted within the meaning of § 2254. This Court may still dismiss an unexhausted claim on the merits, however, "when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett*, 406 F.3d at 623-24; *see also* 28 U.S.C. § 2254(b)(2). As described below, Petitioner fails to raise a colorable federal claim here and as such he is not entitled to federal habeas relief on this unexhausted claim.

As the Court of Appeal noted, California's highest court has "definitively rejected" Petitioner's interpretation of § 654. *Alcala*, 2003 Cal. App. Unpub.

LEXIS 5770, at *12.  The California Supreme Court, after examining the relevant legislative history and noting that "the statutory language seems clear," announced in an unanimous opinion that § 654 requires a sentencing court to impose the longest potential term of imprisonment, taking associated enhancements into account.  *People v. Kramer,* 29 Cal. 4th 720 (2002).  The trial court in the instant case correctly applied *Kramer* and § 654 in sentencing Petitioner on the offense with the "longest potential term of imprisonment," including associated enhancements: count two, which carried with it the 25 years-to-life enhancement.

This Court must defer to the California Supreme Court's interpretation of state sentencing law and accord the trial court the wide discretion it is due on sentencing decisions.  Petitioner's sentence was within the statutory limits.  *See Walker*, 850 F.2d at 476.  This Court cannot say that Petitioner has alleged the type of "fundamental unfairness" in the trial court's sentencing of him that might constitute a "colorable claim" for federal habeas relief on this claim.  *See Rhode*, 41 F.3d at 461.  Accordingly, Petitioner has failed to raise a colorable federal claim and this Court dismisses his unexhausted claim on the merits.  *Cassett*, 406 F.3d at 623-24; 28 U.S.C. § 2254(b)(2).

**3.**     **Violation of Ex Post Facto Clause**

Petitioner claims that the trial court's imposition of a gun use enhancement pursuant to his conviction on count two (discharging a firearm from a motor vehicle), which carried with it the 25 years-to-life term, violated the Ex Post Facto Clause of the Constitution.  Petitioner's claim is without merit.

Victim Michael A. was killed on May 16, 1998.  On that date, the enhancement codified in § 12022.53 applied to persons "who in the commission of [the specified] felony intentionally and personally discharged a firearm and

17

proximately caused great bodily injury, as defined in Section 12022.7." *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *17.  This is also the language used in the amended information.  *Id.*  On January 1, 1999,  § 12022.53 was amended to include the words "or death" after "great bodily injury."  *Id.*  This amended version of § 12022.53 appeared on the verdict form on which the jury found the enhancement true.  *Id.*

Petitioner claims that the imposition of a sentence based on this amended version of § 12022.53 violated the Ex Post Facto Clause because the addition of the "or death" language occurred after the underlying offense occurred.  *Id.*  As the Court of Appeal noted, Petitioner's claim hinges on the "assumption that the killing of Michael A. by gunfire from the drive-by gang shooting did not constitute 'great bodily injury,' and would not have qualified for imposition of the enhancement but for the addition of the 'or death' language after the date of the incident." Id. at *18.

The Court of Appeal noted that § 12022.54(d) defined "great bodily injury" by reference to § 12022.7, where it is defined as  "a significant or substantial physical injury." The court continued:

> Appellant does not dispute that Michael A., who died of a gunshot wound to the head, suffered great bodily injury within the meaning of this statutory definition. In amending section 12022.53 in 1998, the Legislature expressly stated that "the amendment to subdivision (d) . . . is intended to be declaratory of existing law and to clarify that the enhancement in that subdivision applies to causing great bodily injury or death." (citations omitted) This 1998 amendment was made during the same 1997-1998 Regular Session of the Legislature which had adopted the *original* statutory language using only the phrase "great bodily injury." The expression of legislative intent is therefore entitled to substantial consideration. (citations omitted)
>
> In short, as a result of the offense of which appellant was convicted, Michael A. suffered not only death, but also great bodily injury as that term is defined by section 12022.7. The enhancement pursuant to section 12022.53, subdivisions (d) and (e)(1) was therefore properly imposed on appellant, despite the absence of the

18

"or death" language at the time of the subject incident giving rise to appellant's conviction.

*Id.* at *20.

## A.    Legal Standard

Even though the Ex Post Facto Clause applies only to the legislative branch of government, there is a due process counterpart which prevents retroactive enlargement of the reach of criminal statutes by judicial interpretation. *Rogers v. Tennessee*, 532 U.S. 451, 455-56 (2001); *Poland v. Stewart*, 117 F.3d 1094, 1099 (9th Cir. 1997).  "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, the construction must not be given retroactive effect."  *Rogers*,  532 U.S. at  457 (internal quotation marks and brackets omitted).

Due process protects against judicial infringement of the right to fair warning that certain conduct will give rise to criminal penalties.  *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004) (discussing *Bouie v. City of Columbia*, 378 U.S. 347 (1964)). *See Rogers*, 532 U.S. at 457-60 (guiding principle under *Bouie* is that a state law must give fair warning of the conduct that it makes a crime).  *Bouie* is not violated unless judicial construction of a criminal statute represents a "radical and unforeseen" departure from former law. *Webster*,  369 F.3d at 1069.

## B.    Analysis

The Court of Appeal's rejection of Petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is not entitled to federal habeas relief on this claim.

Petitioner claims that because, at the time of the offense, the gun use enhancement at issue here applied to offenses resulting in "great bodily injury" but not explicitly "death," the trial court's use of the amended enhancement in the jury charge represented an ex post facto enlargement of the reach of that criminal statute.   The California Court of Appeal noted that "by its terms, section 12022.53, subdivision (d) defines the term 'great bodily injury' by reference to the definitional language contained in section 12022.7. Section 12022.7 in turn defines 'great bodily injury' as 'a significant or substantial physical injury.'" *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *18.  The Court of Appeal reasonably concluded that the victim's mortal gunshot wound to the head was a "significant or substantial physical injury" and that the trial court properly applied the enhancement relying on that definition of "great bodily injury."  *Id.*

The Court of Appeal also looked to legislative intent, noting that the Legislature expressly provided that the amendment adding "or death" to the enhancement was "declaratory of existing law" and thus was not intended to enlarge the scope of the enhancement.  *Id.*  On these grounds, the Court of Appeal concluded the trial court's imposition of the sentencing enhancement was proper and did not violate the Ex Post Facto Clause.  *Id.*

This Court affords the state court's interpretation of § 12022.54(d) great deference.  *See Hallahan*, 988 F.2d at 88.  On the record before us, we cannot say the Court of Appeal's interpretation of § 12022.54(d) represents a "retroactive enlargement of the reach of criminal statutes by judicial interpretation" such that might violate Petitioner's right to due process. *Rogers*, 532 U.S. at 455-56.  Petitioner's implicit argument that "great bodily injury" excludes "death" contravenes common sense and is not a reasonable interpretation of the statute.  It cannot be said that treating an injury that causes death, in this case a gunshot

wound to the head, as a great bodily injury is either "unexpected" or "indefensible." *Id.* As Respondent notes, to accept Petitioner's argument would result in absurd results; namely, Petitioner would only have been exposed to the 25 years-to-life enhancement had the victim lived.

Finally, the state court's interpretation of § 12022.54(d) does not represent a "radical and unforeseen" departure from former law. *Webster*, 369 F.3d at 1069. Petitioner certainly had fair warning that firing a handgun from a moving automobile would expose him to criminal penalties, regardless of whether the shot proximately caused great bodily injury or death. On that basis, Petitioner's right to due process was not violated and the state courts' rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**4.       Cruel and Unusual Punishment**

Petitioner claims that the trial court's imposition of a 25 years-to-life sentence pursuant to the gun use enhancement on count two violated the Eighth Amendment command against cruel and unusual punishment. Petitioner's claim is without merit. As described above, the trial court sentenced Petitioner to the lower term of 16 months in state prison in connection with count two (discharging a firearm from a motor vehicle), plus 25 years-to-life for the associated enhancement pursuant to § 12022.54(d) and (e)(1). Petitioner claims that the sentence attached to the enhancement for personal use of a handgun is disproportionate to his offense and thus cruel and unusual: "the vicarious provision increased appellant's sentence *25-fold* – not for anything he himself did, but for his vicarious 'use' of the weapon chosen by the perpetrator and the fact that the case was charged as a gang case." Pet. at 53 (emphasis in original).

To determine whether Petitioner's sentence was "cruel and unusual"

21

within the meaning of the California and United States Constitutions, the California Court of Appeal turned to the three prong test the California Supreme Court described in *In re Lynch,* 8 Cal. 3d 410 (1972). The court found the proportionality analysis in *Lynch* comparable to the United States Supreme Court's analysis under the Eighth Amendment, citing *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991). Under *Lynch*, courts analyze the nature of the offense and offender, the severity of the punishment compared to more serious offenses in the same jurisdiction, and finally the severity of the punishment for the same offense in other jurisdictions. *See Lynch,* 8 Cal. 3d at 410. The court applied this analysis and, finding Petitioner's claim lacking across all three prongs, denied his claim.

### A.    Legal Standard

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289-90. For the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross proportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). However, the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime. *Ewing v. California*, 123 S. Ct. 1179, 1187 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring)).

A challenge to the proportionality of a sentence should be analyzed using

objective criteria, which include: (1) the gravity of the offense and the harshness of the penalty; (2) a comparison of sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of sentences imposed for the same crime in other jurisdictions. *Solem*, 463 U. S. at 290-92. Under this proportionality principle, the threshold determination for the court is whether Petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *United States v. Bland*, 961 F.2d 123, 129 (9th Cir.) (quoting *Harmelin*, 501 U.S. at 1005), *cert. denied*, 506 U.S. 858 (1992); *accord Ewing*, 123 S. Ct. at 1180 (applying *Harmelin* standard). Only if such an inference arises does the court proceed to compare Petitioner's sentence with sentences in the same and other jurisdictions. *See Harmelin*, 501 U.S. at 1004-05; *Bland*, 961 F.2d at 129; *cf. Ewing*, 123 S. Ct. at 1187 (noting that *Solem* does not mandate comparative analysis within and between jurisdictions). Where it cannot be said, as a threshold matter, that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

### B.     Analysis

The decision of the California Court of Appeal is not contrary to, or an unreasonable application of, federal law as established by the Supreme Court of the United States. The three inquiries used by the Court of Appeal are substantially similar to the three-part analysis established by *Solem*, 436 U.S. at 290-92. The court conducted a "threshold analysis" by comparing whether the crime Petitioner committed and the sentence imposed raised an inference of "gross disproportionality" as described in *Harmelin*, 501 U.S. at 1005. As the

23

Court of Appeal noted, Petitioner committed a serious crime.  He knowingly and willingly participated with other members of his gang in a premeditated, gang-related, drive-by shooting.  Petitioner was aware that his fellow participants were armed with at least two weapons and still agreed to participate in the drive-by shooting.  Both targets were apparently unarmed and engaged in trying to fix a flat tire when Petitioner and his confederates executed the drive-by shooting.  One of the targets was shot in the head and mortally wounded, at least partly in retaliation for the victim's alleged vandalizing of Petitioner's mother's car.  While Petitioner did not fire the fatal shot, he nonetheless fired a weapon from his automobile in the direction of both targets.

The Court of Appeal acknowledged Petitioner's "youth, his relatively less extensive gang involvement, and the fact he was not in the same car with the person who fired the fatal shot." *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *23.  The court determined that those factors, however, did not outweigh the severity of Petitioner's crime and labeled him a "significant danger to society" whose sentence was appropriate.  *Id.*

The imposition of a 25 years-to-life sentence may seem harsh for an enhancement on a "wobbler" offense that could at times qualify as a misdemeanor.  Given the circumstances surrounding the instant crime and Petitioner's intimate involvement in the planning and commission of a deadly gang-related drive-by shooting, however, this Court cannot say this is one of the "rare cases" where the penalty imposed raises an inference of "gross disproportionality."  The threshold for an inference of gross disproportionality is quite high, even in cases involving "wobbler" offenses.  *See, e.g., Ewing* (sentence of 25 years to-life for conviction of grand theft with prior convictions was not grossly disproportionate); *Andrade* (sentence of two consecutive terms of

25 years-to-life under California's "three strikes" regime when third strikes were "wobbler" offenses was not grossly disproportionate).

While Petitioner does not have a significant criminal record, that fact alone does not render a harsh punishment cruel and unusual when it is imposed in connection with a serious crime. *See, e.g., Harmelin*, 501 U.S. at 1005 (mandatory sentence of life without possibility of parole for *first* offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality).

Because we find no inference that Petitioner's sentence was "grossly disproportionate" to his crime, Petitioner's claim fails and further comparative analysis of Petitioner's sentence is unnecessary. *See Harmelin*, 501 U.S. at 1004-05. The California Court of Appeal, however, did compare Petitioner's sentence to the penalty for other serious offenses in California, and to the penalty for the same offense in other jurisdictions – comparisons that substantially resemble the second and third prongs of *Solem. See Solem*, 463 U. S. at 290-92.

Comparing Petitioner's sentence to the penalties for more serious offenses, the Court of Appeal was unmoved by Petitioner's argument that he was being punished as if he personally killed the victim. The court noted that the "ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means, in order to deter the use of firearms and save lives." *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *23.

Finally, the court acknowledged that California's 25 years-to-life punishment for vicarious gun use during a felony is "among the most extreme" compared to other jurisdictions but, citing an earlier opinion, noted the Eighth

Amendment does not require California to "march in lockstep with other states." *Id.* The court determined that the legislature tailored California's penal code to the state's unique circumstances and that, on that basis, it could not say the enhancement at issue here was grossly disproportionate when compared across jurisdictions. *Id.*

The state courts' conclusion that Petitioner's sentence was not grossly disproportionate to his crime is not contrary to, or an unreasonable application of, controlling federal law as reflected in *Solem* and its progeny.  As such, Petitioner's sentence does not violate the Eight Amendment and his claim fails.

**5.     Failure to Excuse a Juror for Cause**

Petitioner claims that the trial court violated his right to a fair trial by jury and abused its discretion in refusing to excuse a juror for cause.  Petitioner's claim is without merit.

The California Court of Appeal summarized the facts underlying this claim as follows:

> On March 14, 2000, the first day of testimony, the trial court received a note indicating that Juror No. 3 had expressed concern over possible gang retaliation based on his role as a juror. On March 15, 2000, at the suggestion of defense counsel, an in-chambers colloquy was held between the trial court, counsel for both sides, and Juror No. 3, outside the presence of the jury. This in-chambers colloquy, although reported, was ordered sealed by the trial court. The next day, the same parties gathered again in chambers. In a reported and unsealed colloquy, the prosecutor asked Juror No. 3: "will you feel as a result of your feelings any compulsion to come back with a particular verdict for fear of something happening?" At this point, Juror No. 3 responded as follows: "And as I answered yesterday, at the moment I do not feel I can look at the information objectively and base a decision objectively on what the judge tells me is the law and what I've heard in this court and I immediately let the officer know."
>
> Five days later, on March 21, 2000, the trial court received another note from Juror No. 3, this time stating that while driving

from home to court that day, a "Hispanic kid" flashed a suspected four-fingered gang signal at him when he drove by. After receiving this note, the trial court and counsel had another discussion with Juror No. 3 outside the presence of the other jurors and appellant. The trial court deferred ruling on a challenge for cause brought against Juror No. 3 by defense counsel.

The next day, outside the presence of the jury, the trial court heard argument regarding the defense motion to excuse Juror No. 3 for cause. Defense counsel argued that Juror No. 3 should be excused because of "his apparent belief that as a juror his safety and his family's safety may be in jeopardy, because there are gang allegations in this case." The prosecutor argued that Juror No. 3's expressed concerns appeared "perfectly natural and normal," and "just something that he wanted the Court to be aware of," and not something that "would interfere with his ability to serve as a juror," or his ability to "look at the facts." With regard to Juror No. 3's last note about the supposed gang signal from the driver of another car, the prosecutor stated that it appeared Juror No. 3 was simply being "very literal on the instructions received from the Court," and was just trying to do "what the court had asked him to do" by reporting to the court anything that concerned him with respect to the case. On this basis, the prosecutor opposed removing Juror No. 3 for cause.

The trial court denied appellant's motion to excuse Juror No. 3 for cause. Referring to Juror No. 3 as a "high maintenance juror" who "has communicated with the Court on a number of occasions, not just those that relate to these gang matters," the trial court stated that Juror No. 3 appeared to be "somebody not who has some kind of fixation on gang matters or phobia about himself or family, but rather somebody who engages in a good deal of discourse with the Court." The court further stated that he expected that Juror No. 3 might "continue to communicate with the Court, because I think he's that sort of a person, not because he is excessively worried about his family's safety, his safety, gang matters or what have you, but rather because he's a communicator." The court professed not to be surprised that Juror No. 3 and at least one other juror had expressed concern about possible gang-related retaliation, based on the tone of the prosecutor's remarks about gang violence in his opening statement. With regard to Juror No. 3's communication about his observation of alleged flashing of gang signals by a driver, the court noted that Juror No. 3 had subsequently offered alternative, more dispassionate explanations for what he had seen. Given the instructions to all the jurors "that if any of them see any reason to believe that anybody is trying to improperly communicate anything to a juror," the trial court concluded Juror No. 3 was simply trying, very scrupulously and conscientiously, to follow the trial court's instructions. On this basis, the trial court declined to "find anything close to a basis for excusing him for cause."

27

1    *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *28-32.

2          The California Court of Appeal applied California law in rejecting

3    Petitioner's claim that the trial court abused its discretion in declining to remove

4    Juror No. 3 for cause:

5                We conclude the trial court acted within in its discretion in
             declining to excuse Juror No. 3 for cause. Even though at one point
6            Juror No. 3 stated on the record that he did not feel he could look at
             the evidence objectively, on other occasions he indicated the exact
7            opposite, quite clearly stating that his concerns about the
             gang-related nature of the case would not interfere with his ability
8            to serve as a juror and weigh the facts objectively. We have
             reviewed the entire record, including the portions under seal. On
9            the basis of our review, we conclude that despite Juror No. 3's
             statement at one point that he did not feel he could be objective,
10           substantial evidence in the record nevertheless supports the trial
             court's conclusion that Juror No. 3 was able to perform his duties
11           as a juror, and the trial court's exercise of its discretion to deny the
             motion to excuse that particular juror for cause.
12

13   *Id.* at *32-34.

14         **A.      Legal Standard**

15         A criminal defendant has a constitutional right to a fair and impartial jury

16   pool composed of a cross section of the community.  *See Holland v. Illinois*, 493

17   U.S. 474, 476 (1990); *Taylor v. Louisiana*, 419 U. S. 522, 538 (1975); *Duncan v.*

18   *Louisiana*, 391 U.S. 145, 148-58 (1968).  A prospective juror must be removed

19   for cause if his views or beliefs would prevent or substantially impair the

20   performance of his duties as a juror in accordance with his instructions and his

21   oath.  *See Wainwright v. Witt*, 469 U.S. 412, 424 (1985).  "Even if only one juror

22   is unduly biased or prejudicial, the defendant is denied his constitutional right to

23   an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-34 (9th Cir. 1990)

24   (internal quotations omitted), *cert. denied*, 498 U.S. 1091 (1991).

25         The state court's determination of juror impartiality is entitled to a

26

27

28                                        28

presumption of correctness on federal habeas review.  *See Wainwright*, 469 U.S. at 429.  Federal habeas relief may be granted for a state court's failure to strike a juror for cause only where there is no fair support in the record for the trial court's determination that the juror was unbiased.  *Id.* at 424.

### B.     Analysis

The Court of Appeal's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to federal habeas relief on this claim.  Reviewing the record as a whole, we find ample support for the California Court of Appeal's conclusion that the trial court did not abuse its discretion in refusing to strike Juror No. 3 for cause.  While Juror No. 3 suggested shortly after testimony began that he could not "look at the information objectively," on later occasions the juror "indicated the exact opposite" and assured the trial court and both the prosecution and defense counsel that he could weigh the evidence objectively. *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *33.

The juror also appeared sensitive to the gang related nature of the case, as he voiced concerns on the first day of testimony about the possibility of gang retaliation and later reported that an allegedly "Hispanic kid" had flashed "gang signs" at him.  *Id.* at *29.  After questioning the juror multiple times, the trial court concluded Juror No. 3 was a "high maintenance" juror who construed very literally the court's instructions to all the jurors to report anything that concerned them about the case.  *Id.* at *31.  The court did not agree Juror No. 3 was "hypersensitive" to gang-matters, as the defense suggested, but rather was just a high-frequency "communicator."  *Id.*  Indeed, the trial judge indicated that Juror No. 3 had been in frequent contact with the court about matters that were not gang-related (including, as Respondent points out, suggesting the installation of a

phone in the jury lounge). *Id.* at 32; Rep. Tr. Vol. LX at 1749. The court also noted that the juror later offered "dispassionate" explanations for the "Hispanic kid" who flashed alleged gang signs at him. *Alcala*, 2003 Cal. App. Unpub. LEXIS 5770, at *31.

This Court affords the state court a presumption of correctness in its factual determination that Juror No. 3 was not biased. *See Wainwright*, 469 U.S. at 429. On the record before us, we simply cannot say there is no "fair support" for the trial court's decision not to strike Juror No. 3 for cause. *Id.* at 424. After multiple discussions with the juror, the trial court was assured of his objectivity and we see no reason to disturb that finding.

The state courts' conclusion that the trial court properly exercised its discretion in declining to strike Juror No. 3 for cause is not contrary to, or an unreasonable interpretation of, established federal law. Thus, Petitioner is not entitled to relief on this claim.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  July 24, 2007

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALCALA,

                  Plaintiff,

  v.

MCGRATH et al,

                  Defendant.

_____/

Case Number: CV04-04931 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 24, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gonzalo Serafin Alcala
P93231
P.O. Box 7500
Crescent City, CA 95532

Juliet B. Haley
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Dated: July 24, 2007

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk